U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

APR 1 3 2007

CHRIS R. JOHNSON, CLERK

DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS** BY
**TEXARKANA DIVISION**

CASE NO. 07-4036

| | |
|---|---|
| KIRBY COOPER, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> VERSUS <br><br> MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., MENU FOODS HOLDINGS, INC., and WAL-MART STORES, INC. <br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, KIRBY COOPER (hereinafter "Plaintiff" or "COOPER"), a major resident in the State of Arkansas, individually and on behalf of all others similarly situated, who files this Class Action Complaint pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), seeking monetary relief for himself and the class he seeks to represent. This suit is brought against MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., MENU FOODS HOLDINGS, INC., and WAL-MART STORES, INC., representing as follows:

Dockets.Justia.com

## GENERAL ALLEGATIONS

1.    This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

2.    This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the matter in controversy involves a request that the Court certify a class action.

3.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiff's residency is in Miller County, Arkansas, within the geographical boundaries of this Court, and Plaintiff purchased the tainted pet food in this district.

## PARTIES, JURISDICTION AND VENUE

4.    Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada.  It is doing business in the State of Arkansas.  Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extrajudicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

5.    MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

2

6.   Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.   Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

8.   Defendant MENU FOODS, INC. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey.

9.   Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are hereinafter referred to collectively as "MENU."

10.   Upon information and belief, Defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME FUND, a business entity registered in and headquartered in Ontario, Canada. MENU provides principal development, exporting, financing, holding company, marketing, production, research and servicing for MENU animal food products in the United States, including canned and foil pouched dog and cat food. MENU FOODS INCOME FUND is one of the largest animal food producing companies in the world, and MENU operates as one of the largest animal food companies in the United States, whether measured by number of products produced and sold, revenues, or market capitalization.

11. Defendant WAL-MART STORES, INC. (hereinafter referred to as "WAL-MART") is a Delaware for-profit corporation in good standing, whose headquarters are in Bentonville, Arkansas. Defendant WAL-MART's registered agent in the State of Arkansas is The Corporation Company, 425 W. Capitol Ave., Suite 1700, Little Rock, AR 72201. Plaintiff COOPER purchased the contaminated pet food at the Wal-Mart Store in Texarkana, Arkansas.

12. At all times herein mentioned, Defendant MENU was engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

13. At all times herein mentioned, Defendant WAL-MART was engaged in the business of marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

14. At all times herein mentioned, Defendant WAL-MART assumed the role of manufacturer by placing the tainted pet food on the market as its own. For example: Ol' Roy brand dog food has a picture of a dog on the label stating it is "Sam Walton's bird dog Ol' Roy." Additionally, the package states that it is "Marketed by Wal-Mart Stores, Inc."

4

15.    Plaintiff KIRBY COOPER resides at 2409 Woodland, Apt. 13, Texarkana, Arkansas. At all times material to this complaint, he was a resident of Texarkana, in the State of Arkansas.

16.    Plaintiff KIRBY COOPER was the owner of a Pomeranian breed, family dog ("PRINCE") at all times material to this complaint.

17.    This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

## CLASS ACTION ALLEGATIONS

18.    Defendants MENU and WAL-MART manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States. These consumers compose the putative class in this action and have rights that are substantially the same.

19.    Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

20.    The consumers composing the putative class in this action consist of: (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006 to the present.

5

21.     The consumers composing the putative class are so numerous that joinder of all members is impracticable; the questions of law or fact are common to all members of the class; the claims and defenses of Plaintiff COOPER are typical of the claims or defenses of the class; and Plaintiff COOPER will fairly and adequately protect the interests of the class.

22.     While the exact number and identities of the members of the class are unknown at this time, it is asserted that the class consists of thousands of persons. Upon further identification of the recipient class, class members may be notified of the pendency of this action by published class notice and/or by other means deemed appropriate by the Court.

23.     Plaintiff COOPER brings his claim on his own behalf, and on behalf of the following class:  All persons in the United States who purchased contaminated pet food that was produced by Menu Foods.

24.     The sheer number of consumers composing the putative class are so numerous as to make separate actions by each consumer impractical and unfair and a class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

25.     There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiff COOPER is informed and believes that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action.  There would be a failure of justice but for the maintenance of this class action.

26.    Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual members of the Class. Among the common questions of law or fact are the following:

a.    Whether Defendants were negligent in allowing pet food products in the United States to be contaminated with a dangerous ingredient that was not safe for consumption;

b.    Whether Defendants owed a duty to pet owners by ensuring that the pet food was not contaminated with dangerous ingredients;

c.    Whether Defendants' conduct amounted to breach of such a duty;

d.    Whether Defendants' conduct was a proximate cause of Plaintiff's and the Class Members' damages;

e.    Whether Defendants are responsible for the contamination of the pet food;

f.    Whether Defendants were negligent per se;

g.    Whether Defendants are strictly liable;

h.    Whether Defendants breached their warranty of merchantability;

i.    Whether Defendants produced, marketed, distributed, and sold a defective product;

j.    Whether Defendants failed to adequately warn consumers of contaminated pet food;

k.    Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

l.    Whether Plaintiff and the Class Members are entitled to damages, and if so, the proper amount of such damages; and

m.    Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

## FACTUAL BACKGROUND

27.    Plaintiff's dog, PRINCE, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

28.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product.  Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

29.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff COOPER fed his dog, PRINCE, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

30.    As a result of Plaintiff COOPER feeding his dog, PRINCE, the Product manufactured and distributed by Defendants, his dog developed severe health problems, including but not limited to excessive thirst, excessive urination, lack of appetite, convulsions, and ultimately his death.

31.    Had Plaintiff COOPER known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed

8

Defendants' product to his dog, PRINCE, and the dog would not have suffered subsequent health complications and ultimately died.

32.     Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

33.     Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

34.     Defendants' had notice and knowledge as early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product. As such, said consumers' dogs and cats, including Plaintiff's dog, PRINCE, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

35.     Despite such knowledge, Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to

9

warn the public in a timely manner, including Plaintiff, of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

36.    Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product, knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger, in order to advance their own pecuniary interests.

37.    Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like Plaintiff COOPER, entitling these Plaintiffs to exemplary damages.

38.    Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff's dog, PRINCE, and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct, in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future.  The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

39.    As a direct and proximate result of Defendants' negligence as described herein, Plaintiff COOPER sustained damages in the loss of his family pet.

### AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - FAILURE TO WARN

40.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

41.    Defendants    manufactured,    marketed,    distributed,    and    supplied Defendants' Product to distribution centers throughout the United States.  As such,

10

Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

42.     Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

43.     As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

44.     Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

45.     Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

46.     Defendants knew and intended that Defendants' Product would be distributed through the United States without any inspection for defects.

47.     Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by

11

Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

48.    As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiff suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of disposal/burial fees after the death of his dog, PRINCE, as well as the pecuniary value.

49.    Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

50. The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

51.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

52.    Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

12

53. Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

54. The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

55. Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

56. At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a. When placed in the stream of commerce, the Product contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting the dogs and cats of the consumers, including Plaintiff, to risks which exceeded the benefits of the Product;

b. The Product was insufficiently tested;

c. The Product caused serious illness, harmful side effects, and possible death that outweighed any potential utility;

13

d.   In light of the potential and actual risk of harm associated with ingestion of the Product by dogs and cats, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

57.   At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, purchasers of the Product across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

58.   At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

59.   As a direct, legal proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff sustained damage, for which Plaintiff is entitled to recovery.

60.   As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, PRINCE, was injured in health, strength and activity and subsequently died after having suffered physical injuries.

61.   As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff incurred expenses and is entitled to damages for the disposal/burial of the family pet.

62.   As a direct and proximate result of the design and manufacturing defects of Defendants' Product, Plaintiff suffered damages as previously alleged herein.

63.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, including Defendants' knowingly withholding and/or misrepresenting information to the public, including Plaintiff, which information was material and relevant to the harm in question, punitive damages in an amount to be determined at trial that are appropriate to punish Defendants and deter them from similar conduct in the future.

64.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A THIRD CAUSE OF ACTION, SOUNDING IN FRAUD

65.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

66.    At all material times, Defendants were engaged in the business of manufacturing, marketing, distributing, promoting, and selling Defendants' Product.

67.    Defendants made misrepresentations of material facts to, and omitted and/or concealed material facts from, Plaintiff in the advertising, marketing, distribution and sale of Defendants' Product regarding its safety and use.

68.    Defendants deliberately and intentionally misrepresented to, and omitted and/or concealed material facts from, consumers, including Plaintiff COOPER, that Defendants' Product was safe when ingested by dogs and cats. Such misrepresentations, omissions, and concealments of facts include, but are not limited to:

a.    Failing to disclose, and/or intentionally concealing, the results of tests showing the potential health risks to dogs and cats associated with the use of Defendants' Product;

15

b.  Failing to include adequate warnings with Defendants' Product about the potential and actual risks and the nature, scope, severity, and duration of serious adverse effects of Defendants' Product;

c.  Concealing information regarding the known health risks to dogs and cats associated with Defendants' Product; and;

d.  Concealing the known incidents of illnesses and death of dogs and cats, as previously alleged herein.

69.  Defendants intentionally concealed facts known to them, as alleged herein, in order to ensure increased sales of Defendants' Product.

70.  Defendants had a duty to disclose the foregoing risks and failed to do so, despite possession of information concerning those risks. Defendants' representations that Defendants' Product was safe for its intended purpose were false, as Defendants' Product was, in fact, dangerous to the health of and ultimately fatal to Plaintiff COOPER' dog, PRINCE.

71.  Defendants knew that their statements were false, knew of incidents of serious illnesses and deaths in dogs and cats, and knew that their omissions rendered their statements false or misleading.

72.  Further, Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Defendants' Product, and failed to disclose that Defendants' Product caused possible death in dogs and cats, among other serious adverse effects. Defendants also failed to exercise reasonable care in communicating the information concerning Defendants' Product to Plaintiff COOPER, and/or concealed facts that were known to Defendants.

73.    Plaintiff COOPER was not aware of the falsity of the foregoing representations, nor was Plaintiff COOPER aware that one or more material facts concerning the safety of Defendants' Product had been concealed or omitted.

74.    In reliance upon Defendants' misrepresentations (and the absence of disclosure of the serious health risks), Plaintiff COOPER fed Defendants' Product to his dog, PRINCE.  Had Plaintiff COOPER known the true facts concerning the risks associated with Defendants' Product, he would not have purchased the Product nor fed the Product to the family pet.

75.    The reliance by Plaintiff COOPER upon Defendants' misrepresentations was justified because said misrepresentations and omissions were made by individuals and entities that were in a position to know the facts concerning Defendants' Product.

76.    Plaintiff COOPER was not in a position to know the facts because Defendants aggressively promoted the use of Defendants' Product and concealed the risks associated with its use, thereby inducing Plaintiff COOPER to purchase Defendants' Product.

77.    As a direct and proximate result of Defendants' misrepresentations, and/or concealment, Plaintiff suffered damages as previously alleged herein.

78.    Defendants' conduct in concealing material facts and making the foregoing misrepresentations, as alleged herein, was committed with conscious or reckless disregard of the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

17

79.     The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A FOURTH CAUSE OF ACTION, SOUNDING IN IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTY OF MERCHANTABILITY

80.     Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

81.     Defendants manufactured, marketed, sold, and distributed Defendants' Product.

82.     At the time Defendants marketed, sold, and distributed Defendants' Product for use by Plaintiff COOPER, Defendants knew of the purpose for which Defendants' Product was intended and impliedly warranted Defendants' Product to be of merchantable quality and safe and fit for such use.

83.     Plaintiff COOPER reasonably relied on the skill, superior knowledge, and judgment of Defendants as to whether Defendants' Product was of merchantable quality and safe and fit for its intended use.

84.     Due to Defendants' wrongful conduct as alleged herein, Plaintiff COOPER could not have known about the risks and side effects associated with Defendants' Product until after ingestion by Plaintiff COOPER's dog, PRINCE.

85.     Contrary to such implied warranty, Defendants' Product was not of merchantable quality and was not safe or fit for its intended use.

86.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff COOPER suffered damages as previously alleged herein.

18

87.     Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

88.     The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A FIFTH CAUSE OF ACTION
## SOUNDING IN BREACH OF EXPRESS WARRANTY

89.     Plaintiff repeats and incorporates herein by reference the allegations made in the above Paragraphs.

90.     Defendants expressly warranted that the Product was safe and well accepted by dogs and cats and was safe for long-term use.

91.     The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

92.     As a direct and proximate result of the breach of said warranties, Plaintiff was damaged, and he is therefore entitled to damages as described herein.

93.     The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SIXTH CAUSE OF ACTION
## SOUNDING IN NEGLIGENCE

19

94.     Plaintiff repeats and incorporates by reference each and every paragraph
of this complaint as though set forth in full in this cause of action.

95.     Defendants owed a duty to consumers of Defendants' Product, including
the Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing,
marketing, supplying, distribution and selling Defendants' Product, including a duty to
ensure that Defendants' Product did not cause the dogs and cats ingesting the Product
to suffer from unreasonable, unknown, and/or dangerous side effects.

96.     Defendants failed to exercise reasonable care in warning about,
designing, testing, labeling, manufacture, marketing, selling and/or distributing of
Defendants' Product and breached their duties to Plaintiff in that, and not by way of
limitation, they did not warn of the known risks associated with the ingestion of
Defendants' Product and did not exercise an acceptable standard of care, i.e., what a
reasonably prudent manufacturer or seller would have known and warned about.

97.     Moreover, the product lacked sufficient warnings of the hazards and
dangers to users of said Product, and failed to provide safeguards to prevent the
injuries sustained by Plaintiff's dog, PRINCE.    Defendants failed to properly test
Defendants' Product prior to its sale, and as a result subjected users to an
unreasonable risk of injury when this Product was used as directed and recommended.

98.     Defendants additionally breached their duty and were negligent in their
actions, misrepresentations, and omissions toward Plaintiff, in part, in the following
ways:

a.     Failed to exercise due care in designing, developing, and manufacturing
       Defendants' Product so as to avoid the aforementioned risks to individuals
       using these products;

20

b.   Failed to include adequate warnings with Defendants' Product that would alert Plaintiff COOPER and other purchasers to its potential risks and serious side effects;

c.   Failed to adequately and properly test Defendants' Product before placing it on the market;

d.   Failed to conduct sufficient testing on Defendants' Product, which if properly performed, would have shown that Defendants' Product had serious side effects, including, but not limited to, death of the dog or cat;

e.   Failed to adequately warn Plaintiff that use of Defendants' Product carried a risk of other serious side effects;

f.   Failed to provide adequate post-marketing warnings or instructions after Defendants knew, or should have known, of the significant risks of ingestion by dogs and cats of Defendants' Product;

g.   Placed an unsafe product into the stream of commerce; and

h.   Was otherwise careless or negligent.

99.   Defendants knew, or should have known, that Defendants' Product caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed Defendants' Product knowing of its unreasonable risks of injury.

100.   Defendants knew or should have known that consumers' dogs or cats, such as Plaintiff COOPER' dog, PRINCE, would suffer injury and possible death as a result of Defendants' failure to exercise reasonable care as described above.

101.   Upon information and belief, Defendants knew or should have known of the defective nature of Defendants' Product, as set forth herein, but continued to design, manufacture, market, and sell Defendants' Product so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by Defendants' Product.

102.    Defendants failed to disclose to the Plaintiff and the general public facts known or available to them, as alleged herein, in order to ensure continued and increased sales of Defendants' Product. This failure to disclose deprived Plaintiff COOPER of the information necessary for him to weigh the true risks of purchasing Defendants' Product against the benefits.

103.    As a direct and proximate result of Plaintiff COOPER's feeding Defendants' Product to his dog, PRINCE, Plaintiff COOPER's dog, PRINCE, suffered serious health problems and ultimate death.

104.    By virtue of Defendants' negligence, Defendants directly, foreseeably and proximately caused Plaintiff COOPER' dog, PRINCE, to suffer serious health problems and ultimate death. As a result, the imposition of punitive damages against Defendants is warranted.

105.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the class of putative plaintiffs pray for relief, in an amount which exceeds the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005, as follows:

a. Awarding damages including but not limited to the money expended on Defendants' defective Product, veterinary bills associated with the treatment, testing, and diagnosis resulted from ingestion of the defective Product, disposal fees after death of the pet and the pecuniary value of the pet;

b. Awarding punitive damages to Plaintiffs;

c. Awarding pre-judgment and post-judgment interest to Plaintiffs,

d. Awarding the costs and expenses of this litigation to Plaintiffs,

e. Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law; and

f. For such further relief as this Court deems necessary, just, and proper.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on all issues so triable in this civil action.

Dated: April 13, 2007.

KIRBY COOPER, Plaintiff

LUNDY & DAVIS, L.L.P.
300 N. College Ave., Suite 309
Fayetteville, AR 72701
(479) 527-3921
(479) 587-9196 (fax)
jhatfield@lundydavis.com

By: _____
Jason M. Hatfield
Ark. Bar No. 97143

Attorneys for Plaintiff